# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ANGELA JEANETTE JOHNSON-PATTON,<br>Appellant, | DOCKET NUMBER<br>CH-0432-22-0118-I-3 |
| v. | |
| DEPARTMENT OF DEFENSE,<br>Agency. | DATE: June 5, 2026 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Carla Aikens, Esquire, Detroit, Michigan, for the appellant.

Bruce T. McCarty, Esquire, New Cumberland, Pennsylvania, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

The agency has filed a petition for review of the initial decision, which reversed the appellant's removal for unacceptable performance under 5 U.S.C. chapter 43 and found that the appellant proved her affirmative defense of reprisal for her prior equal employment opportunity (EEO) activity. Generally, we grant

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to clarify the administrative judge's findings regarding the appellant's EEO reprisal affirmative defense, we AFFIRM the initial decision.

## BACKGROUND

The appellant served as a GS-9 General Supply Specialist with the agency's Defense Logistics Agency. *Johnson-Patton v. Department of Defense*, MSPB Docket No. CH-0432-22-0118-I-1, Initial Appeal File (IAF), Tab 18 at 55. On November 9, 2015, the agency issued the appellant a performance plan that set forth the three following performance rating tiers: "Fully Successful," "Minimally Successful," and "Unacceptable," and identified the three critical job elements of her position. *Johnson-Patton v. Department of Defense*, MSPB Docket No. CH-0432-22-0118-I-3, Appeal File (I-3 AF), Tab 17 at 32-34. On March 1, 2016, the appellant was issued a summary performance rating of "Minimally Acceptable"[2] for the rating period covering March 2015 through January 2016. IAF, Tab 18 at 43. On January 25, 2017, the appellant was once

_____

[2] The administrative judge concluded, and the parties do not contest, that the agency used the terms "Minimally Acceptable" and "Minimally Successful" interchangeably. I-3 AF, Tab 70, Initial Decision (ID) at 3 n.3.

again issued a summary performance rating of "Minimally Acceptable" by her first-line supervisor for the rating period from January 2016 through January 2017. *Id.* at 45. On January 27, 2017, she contested the rating with her supervisor and informed her that she intended to file an EEO complaint, and by letter dated February 27, 2017, the agency's EEO office accepted the appellant's request to amend her existing EEO complaint to include a challenge to her Minimally Acceptable performance rating. IAF, Tab 1 at 121-25, Tab 18 at 44-46.

On March 13, 2017, the appellant's first-line supervisor issued the appellant a memorandum informing her that her performance was Unacceptable in the first two critical elements of her position and that she would be placed on a 90-day performance improvement plan (PIP) to provide her with the opportunity to bring her performance up to the Minimally Acceptable performance level. IAF, Tab 18 at 47-49. The appellant subsequently amended her existing EEO complaint to include her receipt of the March 13, 2017 PIP notice. IAF, Tab 1 at 126. After extending the PIP by two weeks, I-3 AF, Tab 17 at 36, the supervisor, by letter dated June 27, 2017, notified the appellant that she had failed the PIP and proposed her removal from Federal service based on her Unacceptable performance in the two critical elements, IAF, Tab 25 at 4-6. The appellant provided a written reply to the removal proposal with supporting documentation. I-3 AF, Tab 17 at 38-52. The deciding official issued a decision sustaining the removal, effective August 10, 2017. IAF, Tab 18 at 55; I-3 AF, Tab 25 at 7-10.

On September 9, 2021, an Equal Employment Opportunity Commission (EEOC) administrative judge issued a bench decision concluding, among other things, that the appellant's January 2017 Minimally Acceptable performance rating and March 13, 2017 PIP notice were issued in reprisal for the appellant's EEO activity. IAF, Tab 32 at 288-89, 366-75, Tab 33 at 13-20. In advance of that decision, the EEOC administrative judge made a finding that the appellant

had timely challenged her removal for unacceptable performance through the EEO complaint process within 45 days of the August 10, 2017 removal decision. IAF, Tab 32 at 696-98. Based on his conclusion that the appellant had timely raised her August 10, 2017 removal as one of the issues to be decided in her EEO complaint, the EEOC administrative judge directed the agency to issue a final agency decision (FAD) on the issue and to provide the appellant with Board appeal rights. *Id.* at 695; I-3 AF, Tab 49 at 5. On January 11, 2022, the agency issued a final order that rejected the EEOC administrative judge's finding of discrimination in the September 9, 2021 bench decision. IAF, Tab 33 at 10-12; *Johnson-Patton v. Department of Defense*, MSPB Docket No. CH-0432-22-0118-I-2, Appeal File (I-2 AF), Tab 5 at 7. On February 11, 2022, the appellant appealed that decision to the EEOC's Office of Federal Operations (OFO). IAF, Tab 33 at 4-7. On June 13, 2023, the OFO issued a decision reversing the agency's final order and affirming the EEOC administrative judge's findings. I-2 AF, Tab 5 at 7-24. As relevant here, the OFO concluded that the EEOC administrative judge had correctly determined that the appellant timely challenged her performance-based removal through the EEO complaint process, and so that matter was properly before the agency for separate consideration and for issuance of a FAD and for mixed-case processing. *Id.* at 12-14, 19.

While adjudication of the non-mixed portion of the appellant's EEO complaint continued, on December 7, 2021, the agency issued a FAD on the appellant's mixed-case complaint challenging her removal, finding that it was not the product of discrimination or reprisal. IAF, Tab 1 at 104-19. The decision provided the appellant with notice of her right to file a Board appeal of the decision on her mixed-case complaint. *Id.* at 117-19. On December 29, 2021, the appellant filed the instant Board appeal challenging her removal and requested a hearing on her appeal. *Id.* at 1-11. She also raised the following affirmative defenses: disability discrimination based on failure to accommodate and disparate treatment theories; race discrimination; sex discrimination; religious

discrimination; and reprisal for prior EEO activity. IAF, Tab 13 at 4-7; I-3 AF, Tab 55 at 1-2. After twice dismissing the appeal without prejudice pending resolution of the timeliness issue by the EEOC, IAF, Tabs 37-38; I-2 AF, Tab 7, the appeal was automatically refiled following the OFO's denial of the agency's request for reconsideration, I-2 AF, Tab 5 at 12-14, 27-33; I-3 AF, Tab 1; *see Betsy W. v. Department of Defense*, EEOC Appeal No. 2022001325, 2023 WL 9190463 (Dec. 19, 2023).

After holding the appellant's requested hearing, I-3 AF, Tabs 67-68, the administrative judge issued an initial decision reversing the agency's performance-based removal action under chapter 43. I-3 AF, Tab 70, Initial Decision (ID) at 1, 19; Tab 71. First, the administrative judge found that the agency failed to establish by substantial evidence that the appellant's performance was unacceptable prior to her placement on the PIP, and so the agency failed to meet its burden of proof for the performance-based removal action. ID at 5-14; *see Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1360-61 (Fed. Cir. 2021) (finding, for the first time, that to support an adverse action under chapter 43, an agency "must justify institution of a PIP" by showing that the employee's performance was unacceptable before the PIP); *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16 (clarifying that *Santos* applies to all cases pending before the Board, regardless of when the events at issue took place).

Second, the administrative judge found that the appellant established her affirmative defense of reprisal for her prior EEO activity. ID at 14-19. In making this determination, the administrative judge credited the findings of the EEOC administrative judge and the OFO concluding that the appellant's first-line supervisor's March 13, 2017 letter placing the appellant on the PIP was reprisal for her prior EEO activity. ID at 15-16. Based on this finding, the administrative judge concluded that the appellant's removal under chapter 43 also constituted reprisal for her prior EEO activity. ID at 16. Finally, the administrative judge

determined that the appellant failed to establish her affirmative defenses of discrimination based on her disability, race, color, sex, and religion. ID at 17-19. Based on his conclusions that the agency failed to meet its burden of proving that the appellant's pre-PIP performance was unacceptable and that the appellant proved her affirmative defense of reprisal for her prior EEO activity, the administrative judge reversed the agency removal action. ID at 19.

The agency has filed a petition for review of the initial decision and certified its compliance with the administrative judge's interim relief order. Petition for Review (PFR) File, Tab 1 at 4-27, 29-31. The appellant has filed a response in opposition to the petition for review, arguing that the agency has not complied with the administrative judge's interim relief order, that the petition for review is untimely by 1 day and should be dismissed, and that the administrative judge did not err in reversing the removal action. PFR File, Tab 3. The agency has filed a reply. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

On petition for review, the agency argues that the administrative judge erred by reversing the removal action. PFR File, Tab 1. Regarding the administrative judge's finding that the agency failed to prove that the appellant's pre-PIP performance was unacceptable, the agency argues that the administrative judge made the following errors: (1) he ignored Board caselaw stating that a supervisor's testimony about pre-PIP performance, standing alone, is sufficient to establish unacceptable performance; (2) he overlooked contemporaneous documentary evidence and testimony showing that the appellant's pre-PIP performance was unacceptable; (3) he overlooked evidence demonstrating that the appellant's first-line supervisor properly distinguished between performance at the Unacceptable and Minimally Acceptable levels; and (4) he improperly relied on immaterial evidence from individuals uninvolved in evaluating the appellant's

pre-PIP performance in determining that the agency failed to establish that her pre-PIP performance was unacceptable. *Id.* at 8-21.

Regarding the administrative judge's finding that the appellant proved her affirmative defense of reprisal for her prior EEO activity, the agency argues that the administrative judge improperly disregarded precedent from the Board and the U.S. Court of Appeals for the Federal Circuit in considering, sua sponte, whether the EEOC's finding that the appellant's placement on the PIP was reprisal for her prior EEO activity had preclusive effect in the instant Board appeal. *Id.* at 21-25. The agency argues that the administrative judge's decision to raise the issue sua sponte constituted harmful error and that, consequently, his finding that the appellant proved her affirmative defense of reprisal for her prior EEO activity should be reversed. *Id.* at 25.

<u>The agency has complied with the administrative judge's interim relief order.</u>

With its petition for review, the agency has provided a certificate of compliance as well as a Standard Form (SF) 50 reinstating the appellant to an interim position as a GS-9 Management and Program Analyst. PFR File, Tab 1 at 29-30. In the certification of compliance, the agency states that the appellant's previous position as a GS-9 General Supply Specialist no longer exists so she was placed into an equivalent position as a GS-9 Management and Program Analyst. *Id.* at 29. The certification further states that the agency has determined that the appellant's return to the work environment during the pendency of the appeal would be unduly disruptive but that she would nevertheless continue to receive the pay, compensation, and all other benefits of her interim position during the interim relief period. *Id.*

In reversing the removal action, the administrative judge ordered the agency to provide interim relief and to certify that it had done so with its petition for review. ID at 20-21. When an administrative judge orders interim relief under 5 U.S.C. § 7701(b)(2)(A), an agency, in its petition for review, must certify that it has complied with the interim relief order either by providing the required

interim relief or showing that it determined that the appellant's return to, or presence in, the workplace would be unduly disruptive. *Johnson v. Department of Veterans Affairs*, 2023 MSPB 9, ¶ 6; 5 C.F.R. § 1201.116(a). The Board has held that an interim relief order generally requires that an appellant be returned to the position from which she was separated, effective as of the date of the initial decision, unless the agency determines that this action would unduly disrupt the work environment. *Chavies v. Department of the Navy*, 104 M.S.P.R. 81, ¶ 4 n.1 (2006); *see Shay v. Department of Defense*, 67 M.S.P.R. 366, 369 (1995) (finding that the agency was required to make an undue disruption determination even though its decision to place the appellant in a position other than her former position pursuant to an interim relief order was based on the fact that her former position no longer existed). If the agency determines that the appellant's return to the workplace would be unduly disruptive, it must nevertheless provide the appellant the pay, compensation, and all other benefits during the interim relief period. 5 U.S.C. § 7701(b)(2)(B); *Johnson*, 2023 MSPB 9, ¶ 7. The Board's review of interim relief is limited to determining whether the agency actually made an undue disruption determination and whether the employee has received appropriate pay and benefits—it cannot review the merits of the agency's undue disruption determination. *Johnson*, 2023 MSPB 9, ¶ 7; *see King v. Jerome*, 42 F.3d 1371, 1375 (Fed. Cir. 1994).

Here, the agency has provided an SF-50 showing that it appointed the appellant to a position equivalent to her prior position and has averred that it is working with the Defense Finance and Accounting Service to ensure that the appellant receives back pay and associated benefits from the date the initial decision was issued. PFR File, Tab 1 at 29. The appellant has also acknowledged that she is in the process of providing the information the agency requested in order to receive back pay and benefits. PFR File, Tab 3 at 4. Although the appellant asserts that she has not received information regarding the position to which she will be reassigned, the SF-50 the agency included with its

interim relief certification identifies that information. PFR File, Tab 1 at 30. To the extent the appellant is challenging the agency's decision to reassign her to a different position, her argument is without merit. *See Shay,* 67 M.S.P.R. at 369; *see also Nadolski v. Merit Systems Protection Board*, 105 F.3d 642, 645 (Fed. Cir. 1997) (explaining that the entitlement to interim relief under 5 U.S.C. § 7701(b)(2) does not prevent an agency from imposing additional terms or conditions on the employment, such as a change of station or change in duties); *Costin v. Department of Health and Human Services*, 72 M.S.P.R. 525, 533 (1996) (confirming that an agency may, as part of an undue disruption determination, detail, assign, and transfer an employee to a different duty location). Accordingly, we conclude that the agency has complied with the administrative judge's interim relief order.

The agency's petition for review was timely filed.

The appellant also argues that the agency's petition for review was untimely by a day and should be rejected. PFR File, Tab 3 at 4. Contrary to the appellant's assertion, the agency's petition for review was timely filed. The initial decision set forth the deadline for filing a petition for review as November 11, 2024. ID at 22; *see* 5 C.F.R. § 1201.114(e) (setting forth a 35-day deadline for filing a petition for review). Because November 11, 2024, was a Federal holiday, Veterans Day, the agency's deadline to file a petition for review was November 12, 2024. *See* 5 C.F.R. § 1201.23 ("If the date that ordinarily would be the last day for filing falls on a Saturday, Sunday, or Federal holiday, the filing period will include the first workday after that date."). Accordingly, the agency's petition for review, which was electronically filed on November 12, 2024, is timely.

The administrative judge did not err in finding that the appellant proved her affirmative defense of reprisal for her prior EEO activity.

In analyzing the appellant's affirmative defenses of discrimination and reprisal for her protected EEO activity, the administrative judge noted the EEOC

administrative judge's findings that the appellant had established a prima facie case of disparate treatment based on her prior EEO activity when she received a Minimally Acceptable performance rating and was placed on the PIP, and that the agency did not rebut the appellant's prima facie case and so the appellant established that her placement on the PIP was reprisal for her prior EEO activity. ID at 15-16 (citing IAF, Tab 32 at 371-73). He further observed that those findings were affirmed by the OFO. ID at 16; I-2 AF, Tab 5 at 7-24, 27-33; *see Betsy W. v. Department of Defense*, EEOC Appeal No. 2022001325, 2023 WL 9190463 (Dec. 19, 2023). Based on these findings, the administrative judge determined that he would credit the EEOC's determination that the appellant's first-line supervisor placed her on the PIP in reprisal for her prior EEO activity, citing to a Federal Circuit decision concluding that res judicata barred the appellant from reraising allegations of Title VII discrimination and reprisal previously adjudicated by the district court, as well as a Board decision finding that the appellant was collaterally estopped from reraising a religious discrimination claim previously resolved by the EEOC. ID at 16 (citing *Kincade v. Department of the Treasury*, 226 F. App'x 991, 993 (Fed. Cir. 2007)[3]; *Dorsey v. Department of the Air Force*, 78 M.S.P.R. 439, 444 (1998)). Consequently, he determined that the appellant established that her EEO activity was both a motivating factor and a "but-for" cause of the agency's decision to place the appellant on the PIP on March 13, 2017. ID at 14-16 (citing *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 21-33 (setting forth the legal standard and analytical framework for claims of discrimination and reprisal under Title VII)).

---

[3] *Kincade* is a nonprecedential decision of the Federal Circuit. The Board may follow a nonprecedential decision of the Federal Circuit when it finds its reasoning persuasive. *See Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 13 n.9 (2016). However, we are not citing *Kincade* for its precedential value and are instead citing it to acknowledge the administrative judge's findings below.

Next, the administrative judge determined that the agency would not have removed the appellant under chapter 43 in the absence of her March 13, 2017 placement on the PIP, so he concluded that the appellant established that her removal was also reprisal for her prior EEO activity. ID at 16. Given the necessity of the PIP as a precursor for the performance-based removal action, the administrative judge determined that the appellant also established that her prior EEO activity was both a motivating factor and a "but-for" cause of the removal decision. ID at 16; *see Pridgen*, 2022 MSPB 31, ¶¶ 19-24 (distinguishing between the "motivating factor" and "but-for" causation standards and setting forth the ways in which an appellant can establish each standard).

On review, the agency argues that the administrative judge improperly disregarded precedent from the Board and the Federal Circuit in adjudicating this claim. PFR File, Tab 1 at 21-25. Specifically, the agency argues that in deferring to the EEOC administrative judge's finding that the appellant's placement on the PIP was reprisal for her prior EEO activity, the Board administrative judge raised the issue of the potential preclusive effect of the EEOC administrative judge's finding sua sponte, even though the appellant had not raised an affirmative defense alleging that collateral estoppel or res judicata barred relitigation of the EEO reprisal issue in her appeal. *Id.* at 22-25. The agency argues that the administrative judge confirmed that the appellant had not raised an affirmative defense of collateral estoppel during the hearing and that his ruling on the agency's motion to compel also indicated that the appellant had not preserved the issue. *Id.* at 22, 24 (citing I-3 AF, Tab 67, Hearing Transcript (HT-1) at 12; I-3 AF, Tab 53 at 13). Consequently, the agency argues that the administrative judge's decision to raise the issue was contrary to existing Board and Federal Circuit precedent and therefore constituted reversible error. PFR File, Tab 1 at 25.

*The administrative judge properly applied preclusive effect to the EEOC administrative judge's prior finding that the appellant's March 13, 2017 placement on the PIP was reprisal for her prior EEO activity.*

<u>The appellant preserved her argument that the administrative judge should defer to the EEOC administrative judge's prior finding that her placement on the PIP was reprisal for her prior EEO activity.</u>

Challenging the agency's argument that she failed to preserve her claim that the administrative judge should give preclusive effect to the EEOC administrative judge's prior finding of EEO reprisal, the appellant asserts that she attached the transcripts from the EEOC proceeding as exhibits, her counsel argued in favor of the preclusive effect of the prior decision during the hearing, and she argued in her prehearing submission that the EEOC administrative judge's finding should be given preclusive effect. PFR File, Tab 3 at 6-7; I-3 AF, Tab 19 at 14-15; IAF, Tab 32. She also notes that in her closing brief, she specifically requested that the administrative judge incorporate the findings from the EEOC administrative judge, including his finding that the appellant's placement on the PIP was reprisal for her prior EEO activity. PFR File, Tab 3 at 7; I-3 AF, Tab 66 at 4, 13.

In its reply, the agency argues that the fact that the appellant included the transcript from the prior EEOC proceeding with her exhibits and referenced the findings of the EEOC administrative judge in her prehearing submissions did not evidence that she was attempting to argue for the preclusive effect of those findings. PFR File, Tab 4 at 14-15. The agency further notes that the terms "collateral estoppel" and "res judicata" do not appear anywhere in her pleadings, also evidencing that the appellant failed to properly raise the potential affirmative defense. *Id.* at 15-16.

We agree with the appellant that the record establishes that she properly preserved her argument that the EEOC administrative judge's findings should be given preclusive effect in her Board appeal, and that the administrative judge

acknowledged this argument and properly considered it. As the appellant correctly notes, in the section of her prehearing submission addressing the parties' agreed-upon material facts, the appellant noted that there were no agreed-upon facts but observed that there were some determinations that had already been made by the EEOC administrative judge, including that the appellant had been subjected to retaliation based on her prior EEO activity. I-3 AF, Tab 19 at 15. Additionally, in her response to the administrative judge's affirmative defense order, the appellant identified that "many of these issues," to include her claim of retaliation for her prior EEO activity, "were already adjudicated" by the EEOC administrative judge. IAF, Tab 13 at 4-6.

Further, during the hearing, the administrative judge repeatedly referred back to and acknowledged this argument from the appellant's prehearing submission and indicated that he intended to agree with the appellant that the EEOC administrative judge's finding of reprisal for the appellant's prior EEO activity should be given preclusive effect. HT-1 at 13 (overruling the appellant's objection to any questioning of a witness concerning the contents of the PIP, stating "in terms of what I -- I know that I'm going to be deferring to from the last case [before the EEOC administrative judge], there's three items that you articulated that I anticipate doing so. Before -- it was in your prehearing submissions before the list of proposed witnesses"), 14 (finding, as follows, in response to the appellant's argument in favor of giving preclusive effect beyond the three issues mentioned in the appellant's prehearing submission: "Okay. I'm not sure you can take it up at this point, because I did invite you to articulate the things that should have res judicata and collateral estoppel, and it's -- it's kind of difficult to go through a hearing if -- if I keep hearing what the judge said beyond the three things that I'm sure he said"); I-3 AF, Tab 68, Hearing Transcript (HT-2) at 110-11 (acknowledging, in response to the appellant's objection to a line of questioning that concerned issues addressed in the EEOC appeal "[t]here are at least three findings that I am going to be deferring to from EEOC that were

stated in Appellant's pre-hearing submissions and that I will not be repeating here"), 112 (responding to the agency's follow-up question about whether the administrative judge also intended to defer to the credibility findings of the EEOC administrative judge, stating "If you will recall, during our pre-hearing conference I did state that if -- if Appellant had any findings of [the EEOC administrative judge] that they wanted me to defer to, that they could make a -- that Appellant can make a submission on this. I don't have that to decide. But that does not open the door to just any question about anything that happened in that EEO case"). As the appellant correctly notes, she subsequently argued that the administrative judge should adopt the EEOC administrative judge's finding that the appellant's placement on the PIP was reprisal for her prior EEO activity, and the administrative judge made such a finding in the initial decision. I-3 AF, Tab 66 at 4-6, 13; ID at 15-16.

Regarding the language the agency quoted from the administrative judge's ruling on the agency's motion to compel, in the order, the administrative judge noted that he would not simply assume that the appellant was raising a claim of discrimination in her Board appeal on the same bases as those she had alleged in her prior case before the EEOC, noting that the bases she identified in her prehearing submission differed from those that she identified in her response to the administrative judge's affirmative defenses order. PFR File, Tab 1 at 24; I-3 AF, Tab 53 at 13. As a result, the administrative judge ordered the appellant to "clarify the precise EEO profiles" she was alleging that served as the bases for her discrimination and reprisal claims, including the bases for her prior EEO activity. I-3 AF, Tab 53 at 13. In doing so, however, the administrative judge did not limit the appellant's ability to argue in favor of the preclusive effect of the prior decision, and in fact provided the appellant with the opportunity to "clearly identify the prior EEO activity" that served as the basis for her EEO reprisal claim if she planned to make such an argument. *Id.* Following this ruling, as previously discussed, the administrative judge stated his intention to

adopt the prior findings by the EEOC administrative judge, and the appellant reiterated her argument in favor of such a finding in her closing argument brief, lending further credence to the fact that the parties clearly understood the nature of the appellant's request that the Board administrative judge give preclusive effect to the EEOC administrative judge's findings on this issue. I-3 AF, Tab 66 at 4, 13; HT-1 at 12-14; HT-2 at 110-12.

Finally, regarding the language from the administrative judge stating that he "didn't see an articulation of the [rulings of the EEOC] that Appellant would believe have collateral estoppel effect" that the agency quotes from the hearing, the administrative judge was responding to an objection about whether weekly PIP reports were included in the record in the EEOC appeal, and in the rest of that quotation, the administrative judge justified allowing the reports by observing that the appeal before him was an appeal under chapter 43 as distinguished from the non-chapter 43 matters at issue in the prior EEOC action. PFR File, Tab 1 at 22; HT-1 at 10-12. In his subsequent ruling overruling the appellant's objection, the administrative judge once again referred to the "three items [the appellant] articulated" from the EEOC appeal that he anticipated he would be deferring to, which included the potential preclusive effect of the EEOC administrative judge's finding of reprisal for the appellant's prior EEO activity. HT-1 at 12-13. Thus, when placed in the proper context, this also supports the appellant's argument that she had properly raised the EEO reprisal issue during the course of the proceedings and the administrative judge had considered it. Accordingly, we agree that the appellant properly raised the potential preclusive effect of the prior EEOC decision on the appellant's EEO reprisal claim below and that the administrative judge properly addressed it.

> Alternatively, the administrative judge did not err by granting preclusive effect to the EEOC administrative judge's prior decision, sua sponte.

The agency cites several cases in support of its argument that the administrative judge erred by raising an affirmative defense of collateral estoppel or res judicata sua sponte. PFR File, Tab 1 at 23-24. One of the cases cited, *Ahuruonye v. Department of the Interior*, MSPB Docket No. DC-0432-15-0649-I-2, Final Order, ¶ 9 (Dec. 7, 2016), is nonprecedential and of no precedential value, and another, *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, 314 (2002), is the separate opinion of Member Slavet, and therefore is of limited precedential value. PFR File, Tab 1 at 23 nn.77-78; *see* 5 C.F.R. § 1201.117(c)(2) (noting that absent limited circumstances not applicable here, the Board's nonprecedential orders are not binding on the Board or its administrative judges and that such orders have no precedential value). Another of the decisions, *Sabersky v. Department of Justice*, 61 F. App'x 676 (Fed. Cir. 2003), is an unpublished decision of the Federal Circuit, and therefore is also not binding precedent. *See Weed v. Social Security Administration*, 110 M.S.P.R. 468, ¶ 11 (2009) (acknowledging that the nonprecedential decisions of the Federal Circuit are not binding precedent); *Omites v. U.S. Postal Service*, 87 M.S.P.R. 223, ¶ 13 (2000) (concluding that the Federal Circuit's unpublished opinions have no precedential value to the Board).

With respect to the other cases the agency cites on review, even assuming that the agency is correct that collateral estoppel is an affirmative defense that must be timely raised and that the appellant failed to do so here, for the following reasons, we still conclude that the administrative judge properly raised the issue sua sponte. PFR File, Tab 1 at 23-24 & nn.77-79 (citing *Arizona v. California*, 530 U.S. 392, 412-13 (2000); *Stearn v. Department of the Navy*, 280 F.3d 1376, 1380-81 (Fed. Cir. 2002); *Killeen v. Office of Personnel Management*, 106 M.S.P.R. 666, ¶ 9 (2007), *vacated and remanded on other grounds*, 558 F.3d

1318 (Fed. Cir. 2009)). First, we must distinguish between the different preclusion doctrines. Collateral estoppel, or issue preclusion, is appropriate when: (1) the issue is identical to that involved in the prior action; (2) the issue was actually litigated in the prior action; (3) the determination of the issue in the prior action was necessary to the resulting judgment; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior action, either as a party to the earlier action or as one whose interests were otherwise fully represented in that action. *Hau v. Department of Homeland Security*, 123 M.S.P.R. 620, ¶ 13 (2016), *aff'd sub nom. Bryant v. Merit Systems Protection Board*, 878 F.3d 1320 (Fed. Cir. 2017). Under the doctrine of res judicata, by contrast, a valid final judgment on the merits of an action bars a second action involving the same parties based on the same cause of action. *Zgonc v. Department of Defense*, 103 M.S.P.R. 666, ¶ 7 (2006), *aff'd*, 230 F. App'x 967 (Fed. Cir. 2007). Res judicata, or claim preclusion, prevents relitigating claims that were, or could have been, raised in the prior action, and it applies when the following criteria are met: (1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties were involved in both cases. *Id.*

Although the administrative judge cited to decisions identifying both preclusion doctrines, we conclude that collateral estoppel is the proper basis for preclusion in the instant case. At issue in the prior EEOC appeal was the question of whether the appellant's March 13, 2017 placement on the PIP was reprisal for her prior EEO activity. IAF, Tab 32 at 307-08; I-2 AF, Tab 5 at 8-9. The instant Board appeal concerns the appellant's removal under chapter 43, and as a part of deciding the removal action, one of the issues to be resolved— whether the appellant's March 13, 2017 placement on the PIP was reprisal for her prior EEO activity—is identical to that decided in the EEOC appeal; the issue was actually litigated in the EEOC appeal; the determination of that issue was

necessary to the resulting judgement in that case; and the party against whom preclusion is sought (the agency) had a full and fair opportunity to litigate the issue in the prior action, having been fully represented by competent legal counsel. IAF, Tab 1 at 7; ID at 2; *see Hau*, 123 M.S.P.R. 620, ¶ 13. Accordingly, all of the elements for the application of collateral estoppel have been met here, and we modify the initial decision to clarify that as the basis for applying preclusive effect based on the prior decision of the EEOC administrative judge. ID at 16.

Additionally, the agency identifies the framework, set forth in *Arizona*, 530 U.S. at 412-13, that limits sua sponte consideration of res judicata. PFR File, Tab 1 at 23-24. Even assuming that the framework applies with equal force to the consideration of collateral estoppel, we conclude, despite the agency's argument to the contrary, that the "special circumstances" identified in that case have been met here. *Id.* As the agency notes, in *Arizona*, the Supreme Court set forth the general proposition that tribunals should not ordinarily base their decisions on res judicata if the parties have not raised that issue, but the court nevertheless observed that a sua sponte finding of res judicata "might be appropriate in special circumstances." *Arizona*, 530 U.S. at 412. Elaborating on those "special circumstances," the court explained that "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised," and noted that "[w]here no judicial resources have been spent on the resolution of a question, trial courts must be cautious about raising a preclusion bar *sua sponte . . . .*" *Id.* at 412-13. Evaluating this language from the Supreme Court, the Federal Circuit in *Stearn*, 280 F.3d at 1379-81, determined that the Board had erred when the administrative judge found, sua sponte, that any challenge to the validity of a regulatory provision was precluded by res judicata since the challenging party had not raised the issue in the prior appeal despite the availability of such argument. Important to the Federal Circuit's determination was the fact that the Board had not actually

ruled on this issue (the validity of the regulatory provision) in the previous litigation, and so the "special circumstances" set forth in *Arizona* were not applicable. *Id.* at 1381. Similarly, in *Sabersky*, 61 F. App'x at 677-79,[4] the court rejected the Board's finding that special circumstances justified the Board's decision to, sua sponte, reopen an appeal on its own motion and dismiss the appeal as barred by res judicata, reasoning that the appellant in that case had the opportunity to raise a whistleblower retaliation claim in the first appeal challenging his removal but had failed to do so. As with *Stearn*, the court in *Sabersky* emphasized the fact that the precise claim at issue in the second appeal —whether the appellant met his jurisdictional burden regarding his argument that his removal was retaliation for his whistleblowing disclosure—had not been decided in the first appeal. *Id.* at 678-79.

Unlike in *Stearn* and *Sabersky*, in the instant case, the exact issue for which the appellant sought and received preclusive effect—whether her March 13, 2017 placement on the PIP was reprisal for her prior EEO activity—was identical to the issue decided by the EEOC administrative judge, and the Board administrative judge had specific notice of that fact, having twice dismissed the Board appeal without prejudice to permit adjudication of the EEOC appeal, and having been alerted to the resolution of that prior appeal by the parties in the interim period.[5] IAF, Tab 32 at 366-75, Tab 33 at 4-7, Tabs 37-38; I-2 AF, Tabs 4-5, 7; *see Arizona*, 530 U.S. at 412. Additionally, because the EEOC fully adjudicated a resolution of this question, including by holding a hearing before an EEOC administrative judge and by issuing decisions by the EEOC administrative judge

---

[4] As previously noted, we cite to this unpublished decision of the Federal Circuit merely to address the agency's argument on review and not to ascribe any precedential value to the court's findings.

[5] We also note that in both *Stearn* and *Sabersky*, the Federal Circuit reversed the Board's decision to raise the preclusion issue sua sponte at the Board level, despite the administrative judge's and the parties' failure to do so below, whereas here, the administrative judge, and not the Board, raised the issue sua sponte.

and the OFO, significant "judicial resources have been spent on the resolution of [the] question," thereby meeting the "special circumstances" criteria set forth by the court in *Arizona* and justifying the administrative judge raising the preclusion doctrine sua sponte. *Arizona*, 530 U.S. at 412-13. Accordingly, the administrative judge's finding is in accord with Board, Federal Circuit, and Supreme Court precedent, and we conclude, in the alternative, that the administrative judge did not err by giving preclusive effect, sua sponte, to the EEOC administrative judge's prior finding that the appellant's placement on the PIP was reprisal for her prior EEO activity.

> *We modify the administrative judge's findings to clarify the appropriate standard for an EEO reprisal claim, but we still agree with the administrative judge that the appellant met her burden of proving this affirmative defense.*

Finally, we take this opportunity to clarify the administrative judge's finding that the appellant met her burden of proving her affirmative defense of reprisal for her prior EEO activity. ID at 15-16. In the initial decision, the administrative judge did not clarify the basis for the appellant's prior EEO activity that supported her EEO reprisal claim, and instead only generally determined that the appellant proved that her placement on the PIP (and, consequently, her removal) were "reprisal for her EEO activity." ID at 16. In his ruling on the agency's motion to compel, the administrative judge informed the appellant that if she was alleging discrimination or retaliation based on her prior EEO activity, she needed to clearly identify the basis for the prior EEO activity. IAF, Tab 53 at 13. The appellant's corrected prehearing submission once again identified her prior EEO complaint as alleging discrimination on the basis of "reprisal," without clarifying the nature of the EEO activity in her prior complaint that later served as the basis for her EEO reprisal claim in her subsequent mixed-case complaint. I-3 AF, Tab 54 at 4.

The remainder of the record also does not provide clear insight into the basis underlying the appellant's prior EEO activity. In discussing the appellant's

claim of EEO reprisal in the OFO decision, the EEOC identified a specific agency case number but did not identify the basis for this prior EEO activity, and a copy of that prior EEO complaint is not contained in the record. I-2 AF, Tab 5 at 7 (noting that the appellant "filed an EEO complaint alleging that she was discriminated on the bases of . . . reprisal for prior EEO activity, i.e., Agency Case No. DLAB 14-0011. . . ."). The transcript from the proceedings before the EEOC administrative judge also does not provide clarity concerning the basis of the appellant's prior EEO activity. IAF, Tab 32. The appellant discussed several EEO complaints she filed during the relevant period, but in discussing the complaint underlying her EEO reprisal claim (Agency Case No. DLAB 14-0011), she identified that she filed that complaint against her former first-line supervisor on or around September 2013, and that a hearing was held on the complaint in January 2016. *Id.* at 558-59. However, there was no further elaboration on the claims contained in this prior complaint.

Additionally, a copy of the appellant's formal complaint (which became the mixed-case complaint at issue in the instant Board appeal) identifies as one of her claims an allegation of reprisal for prior EEO activity and again lists complaint number DLAB 14-0011 as the prior EEO complaint. IAF, Tab 35 at 16, 21-22. The narrative section of the formal complaint states that the appellant filed the complaint against her former first-line supervisor and that agency management officials generally were aware of her complaint but also does not provide elaboration on the details of the prior complaint. *Id.* at 17, 22. Finally, the agency FAD on the removal decision also references the appellant's prior EEO activity. IAF, Tab 1 at 105-17. The FAD notes the appellant's claim that her removal was, among other things, reprisal for her prior EEO activity in EEO case number DLAB-14-0011. *Id.* at 105. The FAD further notes that the appellant filed her prior EEO complaint on November 26, 2013, and that several supervisory agency officials were aware of her prior EEO activity. *Id.* at 113-14 & n.24. However, it too does not identify the nature of this prior complaint.

As previously noted, relying on the Board's decision in *Pridgen*, the administrative judge determined that the appellant established that her EEO activity was a motivating factor in the agency's decision to place the appellant on the PIP on March 13, 2017. ID at 14-16 (citing *Pridgen*, 2022 MSPB 31, ¶¶ 21-29, 32-33). He further concluded that the agency would not have removed the appellant under chapter 43 in the absence of the PIP, and consequently, the appellant proved that her prior EEO activity was also a "but-for" cause of the removal action. ID at 15-16 (citing *Pridgen*, 2022 MSPB 31, ¶¶ 21-29, 32-33).

In *Pridgen*, the Board set forth the different standards applicable to an affirmative defense of discrimination or reprisal. *Pridgen*, 2022 MSPB 31, ¶¶ 30-33. The Board clarified that claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims—that is, if prohibited discrimination or retaliation played "any part" in the contested action (i.e., it was a "motivating factor" in the challenged action), then the appellant is entitled to "forward-looking" relief, but to obtain the full measure of relief available under the antidiscrimination statutes, including status quo ante relief, the appellant must show that discrimination or retaliation was a "but-for" cause of the adverse action. *Id.*, ¶¶ 21-22, 30.

However, although the "motivating factor" standard is applicable to claims alleging retaliation for EEO activity pertaining to discrimination under Title VII, EEO activity alleging disability discrimination is protected by the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) (as incorporated by reference into the Rehabilitation Act), and, therefore, is subject to a different legal standard. *See id.*, ¶¶ 35, 37, 40 (recognizing that complaining of disability discrimination is an activity protected by the ADAAA and explaining that the motivating factor standard is therefore inapplicable to claims of retaliation related thereto). Instead, the Board recognized in *Pridgen* that for an ADAAA retaliation claim,

the appellant must prove "but-for" causation in the first instance. *Id.*, ¶ 43-47. Thus, the nature of the appellant's prior EEO activity is relevant for determining the correct applicable standard of proof to apply to her EEO reprisal affirmative defense.

Despite our inability to determine the exact nature of the appellant's prior EEO complaint that serves as the basis for her EEO reprisal claim, we nevertheless agree with the administrative judge that the appellant established her EEO reprisal affirmative defense based on the EEOC administrative judge's prior findings on this issue. As the Board administrative judge observed, the EEOC administrative judge found that the appellant established a "prima facie case of disparate treatment based on [her] prior EEO activity, when she was . . . placed on [a] performance improvement plan." ID at 15-16 (citing IAF, Tab 32 at 371). The Board administrative judge further noted the EEOC administrative judge's determination that the agency failed to articulate a legitimate reason for its action and so it failed to rebut the appellant's prima facie case. ID at 16 (citing IAF, Tab 32 at 373).

Exploring those findings more closely, in concluding that the appellant proved her EEO reprisal claim, the EEOC administrative judge determined that the appellant proved, by preponderant evidence, that she engaged in the prior EEO activity; that agency officials knew of her prior activity; that she was subsequently subjected to adverse employment actions (including her placement on the PIP); and that a causal connection existed between her protected EEO activity and the adverse employment actions. IAF, Tab 32 at 371. Having determined that the appellant established her prima facie case of reprisal for her prior EEO activity by preponderant evidence, the EEOC administrative judge concluded that the burden shifted to the agency to articulate a "legitimate, nondiscriminatory reason for its conduct," but that based on the totality of the circumstances, the agency's stated reasons for placing the appellant on the PIP were "unworthy of credence." *Id.* at 372. In making this finding, the EEOC

administrative judge observed that the agency had presented "no credible evidence showing similarly situated employees" whose work was scrutinized to the same degree as the appellant's. *Id.* at 373; *see Pridgen*, 2022 MSPB 31, ¶ 24 (identifying "comparator evidence" as one of the methods by which an appellant may prove an affirmative defense of discrimination under Title VII). In summarizing his findings, the EEOC administrative judge concluded that "based on the totality of the evidence presented," the appellant had shown "that she was subjected to . . . retaliation based on her prior EEO activity," and "[t]herefore, a finding of retaliatory discrimination is hereby entered." *Id.* at 374-75.

In *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶¶ 15-17, the Board clarified the Board's findings in *Pridgen* by acknowledging that there are multiple methods for proving an affirmative defense of discrimination or retaliation, and that an appellant may use any relevant evidence to support her claim, including under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) that was utilized by the EEOC administrative judge here. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-24, 42. The EEOC administrative judge's analysis tracks that of the *McDonnell-Douglas* framework the Board validated in *Pridgen* and *Wilson* for establishing "but-for" causation, including by finding that (1) the appellant established her prima facie case of retaliation, IAF, Tab 32 at 370-72; *see Wilson*, 2024 MSPB 3, ¶ 16 (citing *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 35 (2014)), and (2) the agency failed to meet its burden of articulating a legitimate, nondiscriminatory explanation for the action, IAF, Tab 32 at 372-73; *see Wilson*, 2024 MSPB 3, ¶ 17 (citing *Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010)). In making the latter finding, the EEOC administrative judge identified that the agency's explanation for its actions (including its placement of the appellant on the PIP) were "unworthy of credence." IAF, Tab 32 at 370, 372 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000) (stating that "proof that the defendant's explanation is unworthy of credence is simply one form of

circumstantial evidence that is probative of intentional discrimination, and it might be quite persuasive")); *see Wilson*, 2024 MSPB 3, ¶ 12 (describing the burden-shifting standard under *McDonnell-Douglas* as including "evidence that the agency's stated reason for its action is 'unworthy of belief, a mere pretext for discrimination'").

In sum, we agree with the administrative judge that the appellant proved that reprisal for her prior EEO activity was a "but-for" cause of the agency's March 13, 2017 decision to place her on the PIP, based on the EEOC administrative judge's findings of the same. ID at 16. Further, we also agree with the administrative judge that the agency would not have removed the appellant under chapter 43 in the absence of the PIP, and so she also proved that reprisal for her prior EEO activity was a "but-for" cause of her removal. Finally, we modify the initial decision only to clarify that, because the appellant has established that reprisal for her prior EEO activity was a but-for cause of the agency's removal action, she proved this affirmative defense irrespective of whether her prior EEO activity involved claims of discrimination under Title VII, claims of disability discrimination arising under the ADAAA, or some combination of both.

Because the appellant proved her claim of reprisal for her prior EEO activity, the removal action must be reversed. Because we agree with the administrative judge's finding that the agency action must be reversed based on the fact that the appellant proved this affirmative defense, we need not address his alternative finding that the agency failed to meet its burden of proving the performance-based removal action under chapter 43. 5 C.F.R. § 1201.56(b)-(c); *see Hall v. Department of Transportation,* 119 M.S.P.R. 180, ¶ 8 (2013) (noting that an adverse action is sustainable only if the appellant cannot establish his affirmative defenses), *overruled on other grounds by Thurman v. U.S. Postal Service*, 2022 MSPB 21, ¶ 17 n.6.

**ORDER**

We ORDER the agency to cancel the appellant's removal and to restore the appellant effective August 10, 2017. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
COMPENSATORY DAMAGES**

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:          _Gina K. Grippando_

                        _____
                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐   1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐   2) Settlement agreement, administrative determination, arbitrator award, or order.

☐   3) Signed and completed "Employee Statement Relative to Back Pay".

☐   4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐   5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐   6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐   7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.